for you. Call the next case, please. Mr. Austin. They please support. In this case, there was a search warrant issued. Evidence was found that the defendant's home, and eventually the defendant filed an amended motion to quash and suppress and ask for Frank's hearing. In this case, the trial judge abused her discretion when granting the defendant's request for Frank's evidentiary hearing, based on her determination at the first stage hearing the defendant had made a substantial preliminary showing. Deputy Joel Mantia provided the sworn complaint for a search warrant, and therefore Mantia was the affiant for the purpose of obtaining the search warrant. The PATDOE confidential informant provided an affidavit swearing only that the representations made by Deputy Mantia in his complaint for search warrant were true and correct to the best of his knowledge and belief. In McCrae v. Illinois, the U.S. Supreme Court stated that the judge issuing the warrant is not concerned with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told. Thus, the only issue is whether Deputy Mantia was truthful in his complaint. The Frank's court held that a defendant would be entitled to an evidentiary hearing only if the defendant makes a substantial preliminary showing that a false statement, knowingly and intentionally or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and also if the allegedly false statement is necessary for finding probable cause. Regarding the issue of whether Deputy Mantia intentionally, knowingly, included false information in his complaint, the people note that at the Frank's first stage hearing, defense counsel admitted that he did not know whether at the time he filed a sworn complaint, Mantia knew that the information given to him by the confidential informant was allegedly false. Therefore, defense counsel admitted and acknowledged that Deputy Mantia had not intentionally made a false statement in his warrant complaint, and also there's no record implying that he did. So having acknowledged that the first Frank's factor was not applicable, the defendant was required to demonstrate the alternative factor that Deputy Mantia acted with reckless disregard for the truth. To prove reckless disregard for the truth, the defendant had to prove that Deputy Mantia entertained serious doubts to the truth of his allegations, or that circumstances showed obvious reasons to doubt the veracity of the allegations. The defendant did not introduce any evidence to demonstrate that Mantia had any doubts about the truth of his allegations, or that there were obvious reasons for Mantia to have doubted their veracity. Regarding the affidavits that the defendant produced for family members, defense counsel in the trial judge failed to indicate how Mantia would have had access to the information contained in those affidavits at the time that he applied for a search warrant. There's no reckless disregard for the truth when the police officer as the appliant does not question the defendant or his family members about the defendant's whereabouts before he requests a search warrant. Thus, the defendant did not demonstrate a reckless disregard for the truth by Deputy Mantia. Showing that the defendant was not in Illinois during the relevant time period would not invalidate Deputy Mantia's reliance on the confidential informants' allegations, or show that Mantia knowingly or intentionally or with reckless disregard for the truth included a false statement in his complaint. Regarding the probable cause factor, the U.S. Supreme Court in Gates stated that probable cause for a search warrant exists where, given all the circumstances set forth in the affidavit, or in this case, Deputy Mantia's sworn complaint, there is a fair probability that contraband or evidence of a crime will be found in a particular place. This court in Johnson stated that in reviewing the sufficiency of the search warrant complaint, it is only the probability and not a prima facie showing of criminal activity, which is a standard for probable cause. The defendant provided affidavits for family members and the mother of his children that alleged the defendant was not in Illinois during the five-day period listed in Deputy Mantia's complaint. Mantia's complaint listed not only that the defendant was alleged to have sold the drugs during that five-day period, but also that illegal drugs were packaged for sale and were seen by defendants, in defendants' residence, by the informant many times during a two-month period prior to the search. The search warrant was not limited to the search of the defendant's person, but specifically included defendants' residence. Therefore, even if it had conclusively shown that he was out of state during a five-day period specified in Mantia's complaint, that showing would not have invalidated the informant's allegations that he had seen illegal drugs packaged for sale in the residence. And an evidentiary hearing is only required when the allegedly false statement is necessary to the finding of probable cause. And in this case, the fact that the informant saw drugs packaged for sale in the defendant's residence... Is there a taint on the evidence found in the house if the evidence found that he was there and packaged these and sold them is untrue? I mean, does that affect the entire warrant? Well, no, sir. It has nothing to do with... Even if those allegations... We're not talking about the informant, again. It doesn't matter if he's a form of life. I understand. I want to know if, in fact, the deputy, for whatever reasons, did not investigate this further, did not look further, and it turns out that that... And he could have. And found that the defendant was out of town for those five days. Does that action or inaction affect, negatively, the investigation? It does affect, negatively, the finding about drugs being in the house. But in this case... We made these allegations, we wrote these down based on what the informant told him. It turns out it was not true. I mean, maybe you disagree with that, but it turns out that the trial judge believed that it was not true. And my question is, does that then taint the fact that he was told, and therefore verified, that there were drugs sold in the house during that same five day period? No, I don't believe that it does, Your Honor. Okay. That was my long question. Can we go back to basics? This is not a complaint. This is a request for a search warrant by the officer. It was a sworn complaint by the officer. Oh, okay. We call them requests. Okay. What does he have to have to get the issuance of a search warrant, in your mind? He has to show probable cause. Right. Through what method? There's a hearing by the issuing judge. Yeah. What's the evidence he has to show? What's the quantum of evidence? As I just said, he has to show that there's a probable cause. It's not beyond a reasonable doubt. Okay. So he submits an affidavit, right? An affidavit from an informant. He didn't actually submit an affidavit from an informant that made these allegations. He himself, Deputy Mantia, made the allegations. The informant, as I mentioned earlier, only swore that the representations made by Mantia were accurate. He believed that Mantia's allegations were accurate. That's the only affidavit that was provided by the informant himself. And presented to the judge. It was part of the complaint, yes. Right. Okay. And the judge, based on that, issued the warrant. After hearing, yes. Okay. And was it a premises search warrant? A search warrant, yes. For the person and the premises. Okay. Yes. So your view is that, though it may well be that the person searched warrant, there's no basis. But the premises is still good, right? Certainly, we still have probable cause for the search of the premises. Okay. Yes. And the defendant did not dispute the allegations of the illegal drugs being packaged for sale would provide independent probable cause for this. Now, Justice Gordon Petranco stated that in order for a judge to issue a warrant, the petitioning officer only needed to show facts sufficient to demonstrate the probable cause that the premises contained evidence of the crime. And the allegedly false statement that the defendant was present and sold drugs during this five-day period specified in the complaint was not necessary to find probable cause to search the house. And at the first stage hearing, the defendant did not show any of the required franks factors regarding whether Deputy Mantia included a false statement in his complaint and whether there was a lack of probable cause. And therefore, the defendant did not make a substantial preliminary hearing and the trial judge abused his discretion by holding the franks evidential here. What about the idea of corroborating activity by the officer? Well, in this case, the trial judge found that Deputy Mantia failed to corroborate information from the informant in that, as she said, that Mantia did not ask any questions of the informant as to anything. That's clearly erroneous because the complaint clearly stated that the informant had been in the residence up to 16 times during a two-month period and observed in the residence what he knew from experience to be cocaine. In his complaint for the search warrant, Mantia indicated that the informant identified the defendant from a Will County booking photograph. Mantia confirmed that the defendant lived at the house through Will County Correctional System records and the state of Illinois driver's records. And also in his complaint, Mantia indicated that his complaint was based in part on his own observation. So he didn't just rely on the informant. And he did check the informant. He did corroborate the informant's allegations independently. And thus, the language of the complaint itself contradicts the trial judge's finding that Mantia had not questioned the informant and that there was no corroboration. And further, Mantia testified prior to filing the complaint that he had been at or near the defendant's residence on many occasions when on routine patrol. So for a search warrant to be valid, the supporting complaint is not required to show beyond a reasonable doubt that the warrant should be issued, but only it has to establish, as we mentioned earlier, probable cause. In this case, the trial judge simply wanted an unspecified greater level of corroboration. But in this case, obviously, Mantia did take those steps. And the people note, additionally, that before the trial judge granted the defendant's motion for reconsideration, she stated the informant appeared before the issuing judge. But then the trial judge said that she did not have any evidence that there were any questions asked of the informant by the issuing judge. And the fact that the trial judge believed that the informant had appeared before the issuing judge took this matter outside of the scope of Frank's, and therefore, she should not have granted the defendant's motion. There was a third issue that the people raised that Deputy Mantia's reliance on the search warrant was objectively reasonable. The good faith exception should apply if the warrant is ultimately found to be defective. The Illinois legislature codified the good faith exception that was articulated in U.S. v. Leon. It's in the Code of Criminal Procedures at section 114-12b-2. And it indicates that good faith is found whenever an officer obtains evidence, one, pursuant to a warrant obtained from a neutral and detached judge. Two, the warrant is free from obvious defects other than non-delivered errors in preparation. Three, the warrant contains no material misrepresentation by any agent of the state. And four, the officer reasonably believed the warrant to be valid. None of these four factors were shown to be absent in this case. Thank you. People rely on the brief for all other arguments in this case. So you're saying there's no material misrepresentation? No, sir. There was not. Not by Officer Mantia. And we don't believe that the informant deliberately lied in this case. Would the informant be an agent of the state? Could he? Yeah. There's no indication in this record at all that the informant was an agent of the state. I'm asking whether an informant in these formal proceedings becomes an agent. No. Well, in this case. As a conceptual idea. No. No, I don't believe that the informant would become an agent of the state. Not acting on behalf of the state. He's simply producing information. But he's not sanctioned by the state and not an employee in any way of the state. Okay. Thank you, Mr. Osco. Thank you. Mr. Murphy. May it please the court. Mr. Osco. Your Honors, Judge Bertani-Tonzett was entirely within her discretion in finding that Mr. Smith made preliminary showing that statements in the affidavit or the search warrant were made with reckless disregard for their truth. And I think it's very important here to understand how much discretion Judge Bertani actually had in making this finding. What we're looking at at this stage is we want to wash out spurious claims early. We don't want to provide automatic hearings for everybody who wants a Frank's hearing. On the other hand, we're not supposed to show preponderance of evidence even at this stage. It's just supposed to be more than a mere denial and a mere request for cross-examination. And as in other cases, what we have here are affidavits, not only that give Mr. Smith an alibi, but other supporting affidavits that are sufficiently detailed to subject these people to perjury if these things are untrue. And it was entirely within the judge's discretion to find that there was the preliminary showing here. Even it's been recognized by our Supreme Court that given the unavoidably subjective nature of these determinations, it may well be that in some cases a trial judge will deny a hearing when, in fact, a warrant was issued on the basis of the false statements. It is also true that the same balancing test may result in an evidentiary hearing being held when none is warranted. So long as the trial court's judgment is exercised within permissible limits, the judgment will not be disturbed. We just want to give people a chance to challenge these affidavits and protect against perjurious warrants. Now, being that that was within her discretion, I think that's an easy call, we then turn to the merits of the defendant's motion and look whether or not it's been shown by a preponderance of the evidence that this officer acted with reckless disregard for the truth. Under the facts of this case and in this particular warrant application, it is not an abuse of discretion to say that the officer should have done more. That's what we're looking at, is the facts in this case, this trial judge's discretion, this particular warrant application, and what this officer's corroboration was. And was the judge allowed to say, you should have done more in this case? The court took as true that the defendant was not in the state for three weeks prior to the search warrant when the CI claimed to have been in the residence and seen cocaine. There's affidavits and testimony also showed that no drugs were sold or packaged or purchased in the residence. And when you look at the specific affidavit or complaint for search warrant, there's absolutely no basis of reliability of this informant, unlike many other cases that come before this court. There's no prior track record of reliability, no explanation of his knowledge or experience with cocaine. And if Mr. Smith is the subject dealing drugs in this residence, as is stated in that complaint, and if he is gone, why would the CI be in the residence? Why would there be packaged cocaine in the living room when the defendant lives with his brother and his mother and they're the only people that live there? Does the CI know them personally? Which CI? The whole world's full of acronyms. I'm sorry. Thank you. Did he describe the residence other than the address? Did he say who else lived there? The complete lack of these certain details and the basis of knowledge, I think, allows the conclusion that there was a greater probability that the affidavit recklessly disregarded the truth. And I think the judge is entitled to take the insufficiency of those allegations in the warrant complaint when deciding what corroboration was warranted. I come before Justice O'Brien with a confidential informant and say, I know this person to sell cocaine. This is what the person looks like. This is their address. I've been there. Okay, Mr. Murphy, what is your basis of knowledge of cocaine? Well, I have knowledge of cocaine. It's circular. There's nothing indicating that this person's purchased cocaine, they've sold cocaine, they've used cocaine. It's just somebody saying I have knowledge of cocaine. What is the person that has this cocaine is a Mr. Holdridge, and here's his residence. Here's a picture. This is what he looks like. Yes, and this is his address from looking at a phone book. Okay, go kick in his door. Go tear apart his house. There's nothing indicating any basis of reliability of this person, this confidential informant, and, therefore, I think it's appropriate for Judge Bertani to have said, more should have been done here. Just as in the Carroll case where the court felt that you could have looked into this informant's background. You could have checked it against other police agencies. You could have, especially if there's this claimed continuing course of conduct, you could have conducted surveillance for at least one, two days, if anything. You could have seen if the defendant were there. You could have conducted a controlled buy. Would it be, let's go back to your example here, what you're finding what used to be a lot, often in these requests, would be a statement by the requester that the informant had been a reliable source on prior occasions, et cetera, et cetera. Yes. And there's nothing here in this affidavit to say that. That's correct. If there was, would you be making the same argument? If there was, I would certainly attempt to make the same argument. But again, I think when you take in all the other facts in the affidavit, if this person had a reliable track record, I think that certainly would tip the scales. When you have it here that it's completely bare of any basis of this person's knowledge or experience with cocaine and any reason that the police have to believe this person's reliable, that there should be more done here before we go kick in somebody's door and tear apart their house. What should the officer have done? What more should he have done? Well, I think there could have been many things that could have been done. But one, if there's allegedly this person that deals cocaine on this residence, first of all, he could have asked this person to describe the residence to see if he really has been inside this place. All I think we had was an address. He could have conducted surveillance to see if Mr. Smith actually still resides at that residence, other than looking at Secretary of State records or jail records. There could have been surveillance to see what kind of behavior was going on at this residence at certain times. Someone could have attempted to conduct a controlled buy. I think a lot could have been done here. And, in fact, the officer, although conceitedly is not in the application, the officer even lied that he saw the defendant a day before preparing this warrant. He gave testimony that he claimed to have seen him, while he was conducting another traffic stop in front of the residence, come out of his house and videotape him. And the trial judge found that that's simply not true, because she took everything that the defendant said as true, and he was not there. And I think the judges allowed him to take that into consideration and use that towards the veracity of the officer. So, again, I think it's very important to look at the lack of any detail of this search warrant application. I submit that there is not probable cause, especially if you take into account what Judge Bertani took into account, that Mr. Smith was not even there. You have this statement that this person's seen cocaine packaged 10 to 16 times within a two-month period. What does that mean? Was this person there on a day, and they saw this person package 10 to 16 different items on one day? Okay, and so when did that happen? How long in the last two months? Could be 60 days ago. It's really poorly drafted, really lacks of detail. And then he says, well, within the last five days, I may have seen a certain amount or another amount without describing any basis to no measurements or anything about cocaine. The difference is in textures of rock cocaine as opposed to powder cocaine. And, again, to believe the point, no basis of this person's knowledge and experience other than saying, I have knowledge and experience. Not that they've been trained, not that they're prior users, sellers, anything that would maybe concede that they've done some wrongdoing and maybe allow someone to take that into consideration in judging their credibility. But it's the fact that this complete lack of detail in this, I think Judge Bertani, after hearing all the evidence, after hearing, considering the affidavits, the testimony, said, no, this officer did not do enough. This is not fair corroboration just to say, oh, is this the person? Yes. And then look up, oh, he was at that address. Judge Bertani, she found to be true the defendant's statement that he didn't come back to Juliet until the 19th because that's when he, it was her basis because that's the day the rental car was turned back in was on the 19th? Correct. And his direct testimony to that fact. And arriving in Springfield on the 17th, he just testified that that's where he stayed or was there someone else that testified to that? Was there a hotel receipt? I believe his cousin also testified to that. I believe it was Area Sims, if I'm not mistaken. But in any event, I mean, even her taking his direct statement that that was true, that was certainly within her discretion to assign what credibility she was to that statement. And it's not against the manifest way to the evidence. There's nothing other than Mantia's statement that he saw the defendant there, which he doesn't even know. He says the 18th, and then the records show that this actual arrest was made on the 12th. Certainly it was within her discretion to give Mr. Smith credibility in making that statement. And that goes back to the question, and after considering all that evidence, was she within her discretion to say there should have been more corroboration or this complaint was deficient? And again, taking the considerations that we have here, what a report requirement does and what's going to happen when the police go into somebody's home, I think that was a fair determination that she made. There have been other cases, Judge.  that the entire content of what drugs were in the home was false. And it was just simply supported by affidavits of the defendant and his roommates. And it wasn't against the manifest way to the evidence. And again, that's just what we're looking at here. Is it against the manifest way to the evidence, and did Judge Bertone abuse her discretion? I'll show you in two minutes. What about the dichotomy issue, the house versus the person? How do you resolve that? Judge, I would resolve that in, again, still going back to whether there's probable cause to believe that drugs were on the premises is lacking. And two, we don't take every single statement in isolation in the Warren complaint. And what the complaint sets forth is this person saying it's Tim Smith is the subject dealing drugs. So if the court believes that Tim Smith was not even there, but this person is claiming to have been in the residence and seen drug package there, and you can weigh that against all of the other affidavits that say, one, he's not there, and no drugs or packs were sold in the residence, and it's only the defendant's mother or brother who lived there, again, she was within her discretion in making that decision. I have very little time, Judge, but I would say that the good faith argument was certainly waived by the State. They didn't give Judge Bertone a chance to even address it, consider the law that applies, consider any of the facts. It wasn't raised at all, even during the defendant's motions to reconsider. Even if it were not waived, I don't think that applies if there's been a finding that the person in procuring this warrant recklessly disregarded the truth because otherwise the deterrent effect of excluding this evidence would have no benefit. It would allow people, officers, to continue to recklessly disregard the truth. So it wouldn't apply in this case. Thank you. Thank you, Mr. Murphy. And Mr. Rossmoor. Your Honor, the defendant talks about the reliability of the confidential informant. He says that there's no record of reliability, but we also have no record of this warrant here. We don't know whether or not the confidential informant actually appeared directly before the issuing judge. So the presumption that the informant is unreliable or that he hasn't proven he's reliable, it can't be proven in any way, shape, or form. We don't know anything about this individual from the record that's presented because there was no record kept of that warrant here. And so the reliability is not an issue in this case because there's no way to demonstrate it or not demonstrate it. And even if this is a first-time confidential informant, that does not indicate that this person is necessarily unreliable. The defense counsel mentioned the traffic stop. That is not part of the warrant at all. It's a totally unrelated issue. And even if the officer was incorrect in that, it doesn't have any bearing on this warrant whatsoever or his complaint for the warrant. We also have, regarding the issue of not enough corroboration, in our brief the people mentioned on pages 32 through 33, three different cases in particular, Brannon, Bryant, and Carpenter, in which there was almost the same exact level of corroboration. And those courts found that that was sufficient corroboration. This court in Creel also has found that same finding on essentially the same level of corroboration. And what we have here is the trial judge did a de novo review of the issuing judge's ruling on the warrant. But she did not have anyone in front of her who was at that warrant hearing initially before the issuing judge. So she's making a review based on no record, essentially. And we find that's improper to make a de novo review. The defendant also presumes that the affidavits from the family members and the mother of the defendant's children are necessarily accurate and truthful, whereas the defendant, Montia, and the informant are both blank. Certainly, the affidavits from interested parties, especially the mother and the brother who lived with the defendant, are likely to be suspect because they certainly would benefit from sales of drugs from within that house. There would be money flowing into them. And they, of course, don't want to have criminal charges filed against them either. So they're likely, if they know of this, to lie and say that, no, no drugs are being sold here, of course. But doesn't Judge Bertani have that? I mean, that's within her purview to determine whether or not she believes them, you know, reading those affidavits. Are you asking us now to find that she abused her discretion for believing them or finding them credible, that because they're related, that we must find that they shouldn't be found to be reliable by her? I mean, isn't that her judgment call to make? But she didn't make that judgment call. She made a call that Deputy Montia didn't corroborate the information by the confidential informant. She didn't say that I find these affidavits to be reliable and the informant not. That was never a judgment that was made by the trial judge. And regarding the good faith, this is fundamental to this case. Additionally, the state's attorney below did argue that, quote, the officer here, he did his job. He reviewed this information. He came here under oath, told you what happened, and he acted totally with good faith. So the argument was made. And also, without good faith, we don't have this case. It's fundamental to this entire proceeding. I have nothing else, Your Honor. Do you have any additional questions? No. No, we don't. Thank you so much, Mr. Austell. And thank you both for your arguments today. We will take this matter under advisement. We'll get back to you with a written disposition within a short time.